FILED

DEC 2 1 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRIS INDERGARD

Plaintiff,

v.

GEORGIA-PACIFIC CORPORATION.

Defendant.

CV. 06-1317

FINDINGS AND
RECOMMENDATION

PAPAK, Judge:

Plaintiff Kris Indergard filed this action against her former employer, Georgia-Pacific

Corporation, alleging various claims of disability discrimination under the Americans With

Disabilities Act (ADA) and Oregon disability law. Georgia-Pacific's Motion for Summary

Judgment (#70) is now before the court. For the reasons set forth below, Georgia-Pacific's

Motion for Summary Judgment should be denied.

## BACKGROUND

Indergard was employed at Georgia-Pacific's Wauna mill facility from the end of 1984

Page 1 - FINDINGS AND RECOMMENDATION

until February 2006. In December 2003, she took medical leave to undergo surgery for injuries to her knees. She remained on medical leave until March 2005, when her orthopedic surgeon authorized her return to work, but with permanent restrictions.

Georgia-Pacific policy required employees to participate in a physical evaluation before returning to work from medical leave. Georgia-Pacific hired an independent occupational therapist to conduct an analysis of the physical demands of Indergard's former position as Napkin Operator and for the Napkin Adjuster position, which was the next position that Indergard could bid on under the collective bargaining agreement. The analysis identified a requirement that individuals be able to lift and carry sixty-five pounds for the Napkin Operator position and seventy pounds for the Napkin Adjuster position. In light of those requirements, the occupational therapist determined that Indergard's medical restrictions prevented her from participating in the physical evaluation. Indergard met with Georgia-Pacific supervisors and challenged the lifting requirements as inaccurate.

Indergard provided Georgia-Pacific with a note from her doctor removing the permanent restrictions and participated in the physical exam in November 2005. The occupational therapist concluded that Indergard could not perform the requirements of the Napkin Operator or the Napkin Adjuster positions. Georgia-Pacific informed Indergard that she could not return to either position, and that no other positions were available for which she was qualified. On February 8, 2006, Georgia-Pacific terminated her employment pursuant to a provision in the collective bargaining agreement that allowed Georgia-Pacific to terminate employees who had been on leave for more than two years.

Indergard obtained legal representation and filed an administrative complaint with the Oregon Bureau of Labor and Industries (BOLI), which served as a joint filing with the federal

Page 2 - FINDINGS AND RECOMMENDATION

Equal Opportunity Employment Commission (EEOC). The BOLI complaint charged that Georgia-Pacific violated state law by discriminating against and harassing her because she filed a workers' compensation claim and by failing to reinstate her to the position she held before she suffered an on-the-job injury. It also alleged that Georgia-Pacific violated state and federal law by discriminating against her, harassing her and terminating her employment due to her disability. Indergard further charged that Georgia-Pacific failed to accommodate her disability or engage in an interactive process to determine whether accommodation was possible.

Although Indergard's BOLI complaint included a one-page narrative of supporting facts, it did not mention the physical examination. It described her injury and subsequent release to work with permanent medical restrictions. It also described her challenge to the job description prepared by the occupational therapist, and Georgia-Pacific's response, as follows:

> In June, 2005, I met with Respondent's representative. Respondent, through the representative, went through a job description. Respondent told me that the job description covered the position I held at the time of injury. The job description indicated that I would now be required to perform job duties that I had rarely, if ever, performed during my employment with Respondent.
> . . .
> Approximately one month after the June 2005 meeting, Respondent called me and told me that there was no position available for me in the company due to my restrictions. I continued on medical leave with the "right" to look for other jobs with Respondent. My employer suggested that I should apply for unemployment and suggested to my union representative that I should seek medical retirement.
>
> While on medical leave I retained my seniority until December 11, 2005. Respondent continued its refusal to return me to work because Respondent maintained that I could not perform all job duties on the job analysis. Respondent would not consider my statements that the job analysis contained job duties which were not part of my job with Respondent. Respondent refused to discuss accommodation.
>
> Respondent refused to place me in other positions with the company prior to December 11, 2005. I was terminated on February 8, 2006.

(Smith Decl., Ex B at 2.)

The BOLI investigation includes few references to the physical exam. Indergard told the BOLI investigator that she went through a physical exam in November 2005, and that the outcome was that therapist did not recommend that Indergard return to her former position because of the lifting requirements of the job. (Smith Decl., #77, Ex. C at 2.) Georgia Pacific's response to the BOLI complaint noted that Indergard underwent a physical exam. (Smith Decl., Ex. D.) In its memo dismissing Indergard's complaint, BOLI mentioned that Georgia-Pacific required that Indergard undergo a physical examination, without any further discussion. (Walker Decl., # 73, Ex. 2.)

Indergard filed this action on September 15, 2006. The complaint describes the nature of the action as an an action for damages "to correct unlawful employment practices on the basis of actual disability, perceived disability or record of disability and requests for prohibited physical and medical examinations." (Compl., #1, at ¶ 1.) In the general allegations, the complaint states, "Defendant, absent an objectively reasonable basis for doing so, subjected Ms. Indergard to a physical capacity evaluation (PCE)." *Id.* at ¶ 14. Indergard's ADA claim incorporates that allegation and further states, "Defendant required Ms. Indergard to participate in an improper and discriminatory PCE. Defendant used and relied on these improper and discriminatory actions to remove and/or deny Ms. Indergard her position." *Id.* at ¶ 23. Indergard's three state law claims for relief incorporate the allegations set forth in her ADA claim. *Id.* at ¶ 30, 34, 38.

The complaint also alleges that Indergard filed a BOLI claim, which "contained the disability discrimination claims, the workers' compensation claim and the failure to reinstate an injured work [sic] claim." (Compl. at ¶ 8.) Georgia-Pacific's answer admitted those allegations. (Answer at ¶ 8.) The answer did not allege failure to exhaust as an affirmative defense.

Page 4 - FINDINGS AND RECOMMENDATION

After Georgia-Pacific moved for summary judgment, Indergard abandoned all claims except for those alleging that the PCE was an improper medical examination and that Georgia-Pacific discriminated against her because of a perceived disability or record of disability. This court issued a Findings and Recommendation on Georgia-Pacific's motion for summary judgment that found that the PCE did not constitute a medical examination, but further found that questions of fact remained regarding whether the PCE was job-related and consistent with business necessity. The court also found summary judgment was appropriate on Indergard's discrimination based on perceived disability claim. The district court adopted the Findings and Recommendation in full and granted Georgia-Pacific's motion for summary judgment.

Indergard appealed the ruling that the PCE did not constitute a medical examination, but did not appeal the grant of summary judgment on the discrimination based on perceived disability claim. On appeal, the Ninth Circuit held that the PCE was a medical examination. *Indergard v. Georgia-Pacific Corp.*, 582 F.3d 1049, 1058 (9th Cir. 2009). The Ninth Circuit reversed this court's contrary ruling and remanded the case in part for this court to determine whether Indergard exhausted administrative remedies on her medical examination claim.

Georgia-Pacific's second motion for summary judgment is now before the court. Although Georgia-Pacific's motion is titled a motion for summary judgment, it also challenges the sufficiency of the pleadings regarding the medical examination claim. I accordingly construe the motion to contain a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim.

## LEGAL STANDARDS

### I.    Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). The complaint, however, must contain  contain factual allegations sufficient to "raise a right to relief above the speculative level." *Id.* The plaintiff must plead affirmative factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, courts construe all the facts alleged in the complaint in the light most favorable to the plaintiff. *Moss*, 572 F.3d at 967. If the court dismisses for failure to state a claim, the court should grant leave to amend, unless it determines that the pleading could not possibly be cured by alleging other facts. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## II.    Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth and must construe the evidence in the light most favorable to the nonmoving party. *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

## DISCUSSION

I.    **Sufficiency of the Pleadings**

      A.    **Whether the Court Previously Decided the Sufficiency of the Medical Examination Allegations**

The parties dispute whether Indergard properly alleged a claim for an unlawful medical examination and whether the court previously decided the issue. Georgia-Pacific asserts that the court allowed Indergard to assert her ADA medical examination claim for the first time on summary judgment but did not extend that permission to a state law medical examination claim. Georgia-Pacific alternatively argues that Indergard failed to properly allege either a state or a federal medical examination claim. Indergard, however, argues that the court found that she alleged a medical examination claim in the complaint and that Georgia-Pacific's arguments to the contrary are barred under the law of the case or because Georgia-Pacific waived its objection to the court's finding.

The earlier Findings and Recommendation did not address the sufficiency of the allegations concerning Indergard's medical examination claim. Rather, the court merely held that the physical exam did not constitute a medical examination under the ADA. Moreover, the fact that the court relied on federal law to reach its holding is not determinative of whether a state claim existed because, under Oregon law, courts must, to the extent possible, construe state discrimination laws, including the law governing medical examinations, "in a manner that is

Page 7 - FINDINGS AND RECOMMENDATION

consistent with any similar provisions of the [ADA]." Or. Rev. Stat. § 659A.139.

Because the court did not reach the sufficiency of the pleadings in its earlier ruling, Indergard's argument concerning the law of the case is unpersuasive. In addition, Indergard's argument that the court allowed her to amend her complaint and that Georgia-Pacific waived any objection is similarly unavailing.

### B.    Whether the Complaint Sufficiently Pleads a Medical Examination Claim

Under the liberal rules of pleading, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, "[a] party need not plead specific legal theories in the complaint." *Sagana v. Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004) (failure to specifically plead claim under 42 U.S.C. § 1981 was not fatal where the plaintiff's motion to file supplemental authorities provided notice that he pursued a § 1981 claim). Rather, Rule 8 merely requires that the complaint "give the defendant fair notice of the factual basis of the claim and of the basis for the court's jurisdiction." *Skaff v. Meridien N. Am. Beverly Hills, LLC,* 506 F.3d 832, 838-840 (9th Cir. 2007) (complaint sufficient to allege standing where it stated that the plaintiff encountered numerous barriers to disabled access at the defendant's hotel, including "path of travel," guestroom, bathroom, telephone, elevator, and signage barriers and that, as a result, he was deterred from returning to the hotel); *Fontana v. Haskin*, 262 F.3d 871,877 (9th Cir. 2001) (failure to specifically plead a claim for sexual harassment under 42 U.S.C. § 1983 was not fatal where the complaint described the alleged harassment and stated a claim for "violation of civil rights" that incorporated those allegations); *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1131 (9th Cir. 2008) (references to pay in the complaint did not provide fair notice of a claim for compensation discrimination where the complaint alleged that plaintiffs were denied promotions, subjected to a hostile work

Page 8 - FINDINGS AND RECOMMENDATION

environment, and retaliated against on the basis of their race and the references to pay related only to promotion-related differences, not salary inequities).

### 1.    Sufficiency of Pleading for ADA Medical Examination Claim

"Under the ADA, an employer may not require a current employee to undergo a medical examination unless the examination is 'shown to be job-related and consistent with business necessity.'" *Indergard*, 582 F.3d at 1052-1053 (quoting 42 U.S.C. § 12112(d)(4)(A)). Section 12112(d) gives rise to two types of claims. Subsection (d)(1) provides that "medical examinations may not be used to discriminate against qualified persons with a disability." *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999). That section provides a cause of action for qualified individuals with a disability and "directs courts to treat medical examinations as possible evidence of discriminatory conduct." *Id.* Under subsections (d)(2), (d)(3) and (d)(4), however, a plaintiff may bring a claim challenging the scope of a medical examination, even if the plaintiff is not a qualified individual with a disability. *Id.* Subsection (d)(4) provides, "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

Here, Georgia-Pacific contends that Indergard's allegations were insufficient to provide notice regarding Indergard's medical examination claim. Georgia-Pacific argues that the complaint only provided notice of the first type of medical examination claim, under the § 12112(d)(1) provision that prohibits medical examinations as a form of discrimination. As a result, Georgia-Pacific argues that it had no notice that Indergard pursued the second type of

Page 9 - FINDINGS AND RECOMMENDATION

discrimination claim, under § 12112(d)(4), challenging the scope of the medical examination. I find Georgia-Pacific's argument unpersuasive.

The complaint refers to the PCE both as discriminatory and as separately unlawful. Indergard specifically alleged that "Defendant required Ms. Indergard to participate in an *improper and discriminatory* PCE." *Id.* at ¶ 23 (emphasis added). In addition, Indergard separately alleged in the following paragraph that Georgia-Pacific treated her in a disparate, discriminating and harassing manner because of her actual disability, her record of disability or her perceived disability. Moreover, Indergard's general allegations stated that Georgia-Pacific subjected her to a PCE "absent an objectively reasonable basis for doing so," suggesting that Georgia-Pacific violated the ADA because the PCE was not job-related.

In addition to the references to the PCE, the complaint's description of the nature of the action specifically listed "requests for prohibited physical and medical examinations" among the reasons for the action. That language mirrors the language of the statute, which specifically refers to medical examinations. Although that language appears in the preamble to the complaint, under the liberal pleading rules, it nonetheless provides an additional cue that Indergard pursued a medical examination claim apart from her discrimination claim.

Finally the complaint alleges the elements of a § 12112(d)(4) claim. It asserts that Georgia-Pacific conducted an improper medical exam and that Georgia-Pacific relied on the PCE to remove her from her position, or deny her return to her position.[1] While I recognize that

---

1 I make no finding regarding the causation required or type of damages a plaintiff may recover in an action for a violation of 42 U.S.C. § 12112(d)(4)(a). The Ninth Circuit has "not adopted a proximate-causation requirement in the context of § 12112(d)(4)(A)" and declined to reach the issue in Indergard's appeal. *Indergard*, 582 F.3d at 1057 n.3. I merely find that Indergard has alleged an injury as a result of the unlawful examination. *See Griffin v. SteelTek, Inc.*, 160 F.3d 591, 595 n.5 (10th Cir. 1998) (noting that, "before the plaintiff can prevail he must prove injury flowing from his or her responses to employment questions which the ADA prohibits from being asked").

Page 10 - FINDINGS AND RECOMMENDATION

Indergard's allegations would be more clear had she specifically listed a § 12112(d)(4) medical examination claim as a separate cause of action, I nonetheless conclude that her complaint, taken as a whole, contained sufficient allegations to provide notice of her claim for an unlawful medical examination under § 12112(d)(4)(A).

### 2.    Sufficiency of Pleading for State Law Medical Examination Claim

Under Oregon law, similar to 42 U.S.C. § 12112(d) of the ADA, an employer may not require an employee to submit to a medical examination "unless the examination . . . is shown to be job-related and consistent with business necessity" or unless the exam is a voluntary part of an employee health program. Or. Rev. Stat. § 659A.136. As noted above, courts construe the state law governing medical examinations, "in a manner that is consistent with any similar provisions of the [ADA]." Or. Rev. Stat. § 659A.139. Moreover, Indergard's state law discrimination claim incorporates the allegations set forth in her ADA claim. As a result, I conclude that Indergard's complaint sufficiently alleged a state law claim for an unlawful medical examination under section 659A.136.[2]

## II.    Procedural Barriers to the ADA Medical Examination Claim

### A.    Whether Georgia-Pacific Waived Indergard's Failure to Exhaust

Indergard argues that Georgia-Pacific waived its argument that she failed to exhaust administrative remedies for her ADA medical examination claim. As support for this argument, Indergard contends that Georgia-Pacific admitted in its answer that Indergard exhausted administrative remedies and that it failed to raise exhaustion as an affirmative defense. These arguments are unpersuasive.

It is unclear whether a claimant's failure to include allegations in the EEOC charge relates

---

2  In light of this finding, I do not address Georgia-Pacific's arguments regarding whether an amendment to the complaint would relate back to the date of the initial filing.

to the court's jurisdiction over new claims in a subsequent civil action, or is merely a condition precedent to suit. *Compare Josephs v. Pac. Bell*, 443 F.3d 1050, 1054 (9th Cir. 2006) ("The filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to filing suit, but is a requirement subject to equitable doctrines such as waiver and tolling.") *with Vasquez v. County of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003) ("To establish subject matter jurisdiction over his Title VII retaliation claim, Vasquez must have exhausted his administrative remedies by filing a timely charge with the EEOC.")  Under either formulation, however, the exhaustion requirement is a prerequisite to suit and therefore properly falls within plaintiff's prima facie case, rather than an affirmative defense. *See Josephs*, 443 F.3d at 1054. Moreover, "[i]n the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

Here, as this court noted in oral argument on Georgia-Pacific's first motion for summary judgment, Georgia-Pacific's answer did not admit that Indergard had exhausted administrative remedies with regard to her medical examination claim.  Rather, Georgia-Pacific merely admitted that Indergard exhausted administrative remedies with regard to the claims she specifically listed as exhausted, which were disability discrimination claims, a workers' compensation claim and a failure to reinstate claim.  Moreover, even if failure to exhaust constituted an affirmative defense, the court allowed Georgia-Pacific's failure to raise the matter in its reply brief on its motion for summary judgment and avoided any unfair prejudice to Indergard by granting her leave to file a supplemental brief in response.  I therefore reach the merits of whether Indergard exhausted administrative remedies on her ADA medical examination claim.

Page 12 - FINDINGS AND RECOMMENDATION

**B.**    **Failure to Exhaust Administrative Remedies**

"An individual plaintiff must first file a timely EEOC complaint against the allegedly

discriminatory party before bringing an ADA suit in federal court." *Josephs v. Pac. Bell*, 432

F.3d 1006, 1014 (9th Cir. 2005).  The administrative charge requirement serves the important

purposes of giving the charged party notice of the claim and narrowing the issues for prompt

adjudication and decision." *B.K.B. v. Maui Police Dep't.*, 276 F.3d 1091, 1099 (9th Cir. 2002)

(citation omitted).  Thus, courts may not consider allegations of discrimination not included in

the plaintiff's administrative charge "unless the new claims are like or reasonably related to the

allegations contained in the EEOC charge." *Id.* at 1100 (citation omitted).

A plaintiff's civil claim is reasonably related to the allegations in the EEOC charge "to the

extent that those claims are consistent with the plaintiff's original theory of the case." *Id.*

(finding that plaintiff's EEOC charge was reasonably related to claims for both racial and sexual

harassment where the incidents of harassment detailed in her pre-complaint questionnaire related

to both race and gender and the EEOC, not the plaintiff, failed to list those incidents in the EEOC

charge); *see also Equal Opportunity Employment Comm'n v. Farmer Bros. Co.*, 31 F.3d 891, 899

(9th Cir. 1994) (holding that the plaintiff's refusal-to-reinstate claim related to his EEOC charge

for unlawful termination because the same employer allegedly refused to reinstate the plaintiff

for the same discriminatory reason that allegedly caused his termination); *see also Nilsson v. City*

*of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007) (holding that plaintiff's claim for disability

discrimination was not related to her EEOC charge for disability retaliation because the EEOC

charge merely claimed that the employer retaliated against her for filing a worker's compensation

claim, but never alleged disability discrimination).

Thus, courts will not dismiss discrimination claims for failure to exhaust if the allegations

"either fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which can *reasonably be expected* to grow out of the charge of discrimination." *B.K.B.*, 276 F.3d at 1100; *see also Vasquez*, 349 F.3d at 645-646 (plaintiff exhausted administrative remedies regarding retaliation for filing a grievance claim because the EEOC charge described the retaliation, but plaintiff did not exhaust remedies for his claim of retaliation for filing the EEOC charge because the alleged retaliation was committed by individuals not identified as perpetrators in the EEOC charge and took place after the EEOC investigation); *Paige v. California*, 102 F.3d 1035, 1042 (9th Cir. 1996) (plaintiff exhausted administrative remedies for class-wide discrimination claim where the EEOC charge alleged racial discrimination in the examination process for promotion, such that an investigation into the race of applicants for promotions could have grown out of the charge). A plaintiff, however, does not sufficiently exhaust administrative remedies "by merely mentioning the word 'discrimination' in his or her EEOC administrative charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)

As the cases cited above demonstrate, courts liberally construe the plaintiff's EEOC charge but limit that judicial tolerance "when principles of notice and fair play are involved." *Id.* at 636. Thus, "the crucial element of a charge of discrimination is the factual statement contained therein." *Id.* (quotation omitted). Courts must examine "such factors as the alleged basis for the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations" where the discrimination allegedly occurred. *Id.* (quotation omitted).

Here, Georgia-Pacific argues that the Indergard's medical examination claim is not reasonably related to her EEOC charge because the EEOC charge merely suggested that the Georgia-Pacific used the medical examination as a tool for discrimination, rather than charge that

Page 14 - FINDINGS AND RECOMMENDATION

the examination was itself unlawful. In support of that position, Georgia-Pacific cites *Freeman* and *Oparaji v. New York Dep't of Education*, No. 03-4105, 2005 U.S. Dist. LEXIS 13043, at *30-31, 2005 WL 1398072, at *10-12 (E.D.N.Y. June 14, 2005). I find Georgia-Pacific's argument unpersuasive.

In both *Freeman* and *Oparaji*, the plaintiff's new claim arose out of a different set of circumstances than those alleged in the EEOC charge. In *Freeman*, where the plaintiff's EEOC charge alleged racial and gender discrimination only in the context of an election for the school advisory council, it did not exhaust administrative remedies for racial and gender discrimination in the context of teaching assignments, class size and a labor dispute over an eight-period work day. *Id.* at 637-638. The Ninth Circuit reasoned that the plaintiff's original EEOC charge would not have lead to an investigation of his other discrimination claims related to separate events. *Id.* at 638. Similarly, in *Oparaji*, where the plaintiff's two EEOC charges alleged retaliation for filing an earlier EEOC charge concerning national origin discrimination, it did not exhaust administrative remedies for ADA medical examination claim. 2005 U.S. Dist. LEXIS 13043 at *30-31.

Here, however, the EEOC's investigation into Indergard's charge of discrimination could reasonably have reached the legality of the medical examination. Indergard's EEOC charge and medical examination claim both address ADA violations, although the original EEOC charged focused on discrimination rather than the medical examination. The EEOC charge and the medical examination claim both relate to the period following March 2005 when Indergard's physician released her to return to work with permanent restrictions. Moreover, both the EEOC charge and the complaint involve Georgia-Pacific's response to Indergard's request to return to work at the Wauna mill, including its decision to hire an occupational therapist to define the

Page 15 - FINDINGS AND RECOMMENDATION

physical requirements of Indergard's former position. In light of those allegations, the EEOC had reason to inquire into the legality of the medical examination. Therefore, the although Indergard's medical examination claim differs from her EEOC charge, I nonetheless find that the two are reasonably related such that Indergard has not failed to exhaust her administrative remedies with regard to her ADA medical examination claim.

## CONCLUSION

Defendant's Motion for Summary Judgment (#70) should be denied, for the reasons set forth above.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 18th day of December, 2009

Honorable Paul Papak
United States Magistrate Judge