FILED
JUN 14 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRIS INDEGAARD,

Plaintiff,

v.

GEORGIA-PACIFIC CORPORATION,

Defendant.

CV. 06-1317-PK

FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff Kris Indergard filed this action against her former employer, Georgia-Pacific Corporation, alleging various claims of disability discrimination under the Americans With Disabilities Act (ADA) and Oregon disability law. Georgia-Pacific's Motion for Partial Summary Judgment (#88) is now before the court. For the reasons set forth below, Georgia-Pacific's motion should be denied.

**BACKGROUND**

Indergard was employed at Georgia-Pacific's Wauna mill facility from the end of 1984 until February 2006. In December 2003, she took medical leave to undergo surgery for work-related and non-work-related injuries to her knees. Georgia-Pacific policy required employees to

participate in a physical capacity evaluation (PCE) before returning to work from medical leave. The parties' current dispute centers on whether Indergard suffered any damages as a result of the PCE.

## I. The Physical Exam

In 2005, when Indergard sought to return to work after her knee injuries, Georgia-Pacific hired an independent occupational therapist to conduct an analysis of the physical demands of the Napkin Operator position, which was Indergard's former position, and of the Napkin Adjuster position, which was the next position that Indergard could bid on under the collective bargaining agreement. The analysis identified a requirement that employees be able to lift and carry sixty-five pounds for the Napkin Operator position and lift seventy pounds for the Napkin Adjuster position. Indergard met with Georgia-Pacific supervisors and challenged the lifting requirements as inaccurate.

Following her challenge to the lifting requirements, Indergard participated in a "performance-based functional capacity evaluation" conducted by Vicky Starnes, an occupational therapist. (Smith Decl., #95, Ex. A at 1,7.) On appeal from an earlier decision in this case, the Ninth Circuit described the examination as follows:

> On the first day of the PCE, Starnes recorded Indergard's medical history and subjective reports of her current pain level and use of medication, alcohol, tobacco, and assistive devices. Starnes recorded Indergard's weight, height, blood pressure, and resting pulse. She observed Indergard's gait, balance, and posture. She measured the range of motion in Indergard's arms and legs, and compared the results to normal limits. Starnes palpated Indergard's knees and looked for edema in her legs, and performed manual muscle testing, recording the results of Indergard's hip flexors, knee extensors and flexors, bilateral internal and external hip rotation, and straight leg raises.

*Indergard v. Georgia-Pacific Corp.*, 582 F.3d 1049, 1058 (9th Cir. 2009).

Next, Starnes performed the "WEST II" test, which measured Indergard's "body

mechanics" as she lifted various amounts of weight from floor to waist, waist to chest, and chest to overhead, and evaluated Indergard's body mechanics during the lifts. (Smith Decl. Ex. A at 2.) Starnes concluded that Indergard "demonstrated decreased body mechanics and increased risk for injury," "decreased safe control of load" and "difficulty managing a load" when performing various lifts. *Id.* In a separate test, Indergard could not lift and carry more than 50 pounds. *Id.* at 3.

> [Starnes] then measured Indergard's . . . grip strength over varying grip widths. She measured Indergard's static strength to determine her ability to lift, push, and pull in various postures, and compared Indergard's results to norms adopted by the U.S. Department of Health and Human Services. Indergard then performed a "Job Simulation Task," which required her to lift and pour five gallon buckets filled with forty-five pounds of sand.[1] Starnes then tested Indergard's ability to place nuts and bolts in a box while kneeling with her vision obscured, and observed Indergard's ability to climb stairs, stand, sit, kneel, squat, and crawl. Indergard walked on a treadmill for twenty minutes at a 2.8 mile per hour pace, and pushed a weight sled. Finally, Starnes recorded details about Indergard's vision, communication, cognitive ability, hearing, attitude, and behavior.
>
> The second day of the PCE included similar tests. Starnes measured and recorded Indergard's heart rate after she performed the treadmill test, and noted that she required "increased oxygen" and demonstrated "poor aerobic fitness."
>
> Starnes concluded that Indergard was unable to perform the sixty-five pound lift and carry . . . identified as a requirement of the Napkin Operator position, or the seventy-five pound lift . . . identified as a requirement for the Napkin Adjuster position. Starnes recommended that Indergard not return to work, and forwarded the results of the PCE to Dr. Ketzler, [Indergard's orthopedic surgeon,] who agreed with Starnes's assessment. The lifting requirements that the PCE indicated Indergard could not meet were those that she had previously contested as inaccurate.

*Indergard*, 582 F.3d at 1051.

Following the PCE, Georgia-Pacific informed Indergard that she could not return to the

1 Georgia-Pacific asserts that Indergard failed the "job simulation lift task." Indergard, however, successfully completed the task labeled on the evaluation form as a "job simulation task." (Smith Decl. Ex. A at 4, 6.)

Napkin Operator or the Napkin Adjuster position, and that no other positions were available for which she was qualified. On February 8, 2006, Georgia-Pacific terminated her employment pursuant to a provision in the collective bargaining agreement that allowed Georgia-Pacific to terminate employees who had been on leave for more than two years. The parties do not dispute that Indergard could have performed the Napkin Operator position if the sixty-five pound lift and carry was not a requirement of the job. They further agree that Indergard could have performed the Napkin Adjuster position if the seventy-five pound lift was not a requirement of the job.

Indergard has made allegations and offered evidence concerning damages. The complaint seeks compensatory damages and declaratory and injunctive relief. The complaint alleges that Georgia-Pacific subjected to her "an improper and discriminatory PCE" and "used an relied upon these improper and discriminatory actions to remove and/or deny Ms. Indergard her position." During her deposition, Indergard testified that, had she passed the PCE and returned to work, she would have been entitled to back pay dating back to her release from work. (Seidman Decl., #91, Ex. 6 at 3-4.) She also suffered stress during the time that she sought reinstatement, and embarrassment after her termination. *Id.* at 7-9.

## II. Procedural History

This case is before the court on remand from the Ninth Circuit. In January 2008, this court issued a Findings and Recommendation that found that the PCE did not constitute a medical examination, but further found that questions of fact remained regarding whether the PCE was job-related and consistent with business necessity. (#54.) Specifically, questions remained regarding whether the 65 and 75 pound lifts were essential job functions of the Adjustor and Operator positions. *Id.* at 15-16. The district court adopted the Findings and Recommendation and entered judgment in favor or Georgia-Pacific. Indergard appealed. On

appeal, the Ninth Circuit held that the PCE was a medical examination. *Indergard*, 582 F.3d at 1058. The Ninth Circuit reversed this court's contrary ruling and remanded the case for this court "to determine whether the PCE was job related and consistent with business necessity, and to determine whether Indergard exhausted administrative remedies." *Id.*

Following appeal, this court denied Georgia-Pacific's motion for summary judgment regarding exhaustion of administrative remedies. (Order, #83.) Georgia-Pacific's current motion for partial summary judgment contends that Indergard cannot recover compensatory damages for her medical examination claim because she cannot show that the medical portions of the PCE proximately caused those damages.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth and must construe the evidence in the light most favorable to the nonmoving party. *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

**DISCUSSION**

State and federal law place restrictions on employer inquiries into an employee's medical condition. Under the Americans With Disabilities Act (ADA), "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such

employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Under subsection (d)(4), a plaintiff may bring a claim challenging the scope of a medical examination, even if the plaintiff is not a qualified individual with a disability. *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999). Similarly, under Oregon law, an employer may not require an employee to submit to a medical examination "unless the examination ... is shown to be job-related and consistent with business necessity" or unless the exam is a voluntary part of an employee health program. Or. Rev. Stat. § 659A.136. Courts construe the state law governing medical examinations, "in a manner that is consistent with any similar provisions of the [ADA]." Or. Rev. Stat. § 659A.139(1). Here, the Ninth Circuit found that Georgia-Pacific subjected Indergard to a medical examination, as that term is defined by the ADA. *Indergard*, 582 F.3d at 1058.

Georgia-Pacific's motion for summary judgment presents two, related issues: 1) whether the court should view the PCE as a whole when assessing causation; and 2) whether Indergard can establish that the PCE proximately caused her damages. Georgia-Pacific argues that Indergard is unable to establish damages because she cannot show that she suffered any harm as a result of the portions of the testing that rendered the PCE a medical examination. Indergard responds that the court must view the PCE in its entirety. Thus, she contends that, because the evidence shows she lost her job as a result of the PCE, she is entitled to recover all damages associated with the loss of her job, assuming she prevails on the factual question of whether the examination was job-related and consistent with business necessity.

**I. The Law of the Case**

"Under the law of the case doctrine a decision of the court in a prior appeal must be

followed in all subsequent proceedings in the same case." *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989). The doctrine serves to promote judicial finality and thus, "it necessarily follows that the law of the case acts as a bar only when the issue in question was actually considered and decided by the first court." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The doctrine, however, "encompasses a court's explicit decisions as well as those issues decided by necessary implications." *Eichman*, 880 F.2d at 157 (citation omitted). Moreover, "[t]he law of the case turns on whether a court previously decided upon a rule of law . . . not on whether, or how well, it explained the decision." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). Finally, the law of the case controls "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) (citation omitted).

Georgia-Pacific's argument implicates the law of the case doctrine because its reasoning mirrors the dissent to the Ninth Circuit's opinion in *Indergard.* Judge O'Scannlain wrote, "the PCE cannot be considered a single examination but rather a battery of individual tests." 582 F. 3d at 1060 (O'Scannlain, J., dissenting).[2] Thus, he reasoned, that "even assuming that Georgia-Pacific technically violated § 12112(d)(4)(A) by measuring Indergard's pulse and range of

2 Indergard asserts that the court should entertain a motion for sanctions because Georgia-Pacific asserts an argument that the Ninth Circuit has rejected. (Pl.'s Resp., #93, at 1.) The Ninth Circuit, however, did not explicitly address proximate cause, as explained below. As a result, I decline to impose sanctions sua sponte, and would deny a motion for sanctions if one were properly before the court. *See Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) ("[A] party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.")

motion, she has made no showing that such measurements have proximately caused her to lose her job." *Id.* at 1061. Thus, I must determine whether the Ninth Circuit's holding actually considered and decided whether the court should view the PCE as a whole for purposes of causation.

The *Indergard* majority rejected Judge O'Scannlain's idea that the PCE should be viewed as a "battery of individual tests." 582 F.3d at 1057 n.3. The court's holding referred to the PCE as a whole comprised of several tests. *Id.* at 1056. ("The substance of the PCE . . . involved tests and inquiries capable of revealing . . . whether [Indergard] suffered from a disability. Therefore, we hold that the PCE was a medical examination.") More importantly, the court also wrote, "dividing Indergard's PCE into component parts and engaging in proximate-cause analysis creates a risk that employers would seek to obtain medical information in tests that are not job-related and thereby escape liability by asserting that their employment decisions were based on information revealed in non-medical components of the evaluation." *Id.* The court reasoned that such an approach "would promote unnecessary litigation, contravene the statutory prophylactic purpose, and deter disabled employees from returning to work following medical leave, because of concern for being stigmatized by their disabilities." *Id.* The court noted, "[t]his circuit has not adopted a proximate-causation requirement in the context of § 12112(d)(4)(A)" and wrote "the dissent cannot inject into the plain statutory language a contrived proximate-cause requirement." *Id.*

The majority in *Indergard*, however, did not reach whether Indergard must establish that the PCE proximately caused her damages. The court concluded its discussion of O'Scannlain's dissent by stating, "proximate cause is not an issue the Court needs to decide in this appeal before initial determination by the district court and briefing on appeal." *Id.* Thus, because the

Ninth Circuit indicated that it did not need to decide the proximate cause issue, its statements relating to proximate cause are not the law of the case. Thus, I must determine whether Indergard must establish that the PCE was the proximate cause of her damages and, if so, whether she has presented evidence sufficient to preclude summary judgment on that issue. I turn to those questions now.[3]

## II. Whether a Plaintiff Must Establish That an Unlawful Medical Examination Proximately Caused Damages

Normally, a plaintiff pursuing an ADA discrimination claim must establish that "(1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job; and (3) [the defendant] terminated her because of her disability." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). As noted above, however, "plaintiffs need not prove that they are qualified individuals with a disability in order to bring claims challenging the scope of medical examinations under the ADA." *Fredenburg*, 172 F.3d at 1182. Moreover, the Ninth Circuit has not addressed whether a non-disabled plaintiff must establish that the § 12112(d) violation proximately caused her damages

---

3 Both parties cite decisions from courts of appeals that have addressed the related question of "whether a plaintiff has a cause of action for a violation of § 12112(d) without demonstrating the existence of an injury-in-fact, either through actual damage . . . or through the presence of a continuing illegal practice to which plaintiff is likely to be subject absent court intervention." *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 519 (3d Cir. 2001). Those courts have unanimously decided that a plaintiff must establish some injury. *Id.* at 519-520; *see also O'Neal v. City of New Albany*, 293 F.3d 998, 1008 (7th Cir. 2002); *Cossette v. Minn. Power & Light*, 188 F.3d 964, 971 (8th Cir. 1999); *Griffin v. Steeltek*, 160 F.3d 591, 595 (10th Cir. 1998); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 557, 561(5th Cir. 1998); *see also Harrison v. Benchmark Elecs. Huntsville, Inc.*, __ F.3d ___, 2010 U.S. App. LEXIS 632, at *24-25 (11th Cir. Jan. 11, 2010) (finding that plaintiff must "at least show some damages" as an element of a prima facie case for a violation of § 12112(d)). Here, however, Georgia-Pacific does not argue that Indergard has failed to demonstrate an injury fact. At oral argument, it recognized that it does not dispute her right to seek declaratory and injunctive relief. Rather, Georgia-Pacific instead argues that Indergard must prove that the medical exam proximately caused her damages.

before she may recover for those damages.

The ADA's enforcement provision, 42 U.S.C. § 12117, provides a starting point for my inquiry. It provides that "the powers, remedies and procedures" available to "any person alleging discrimination on the basis of disability in violation of any provision" of the ADA are the same as those provided by Title VII, 42 U.S.C. §§ 2000e-4 to 2000e-6, 2000e-8, 2000e-9. 42 U.S.C. § 12117(a). By its language, the section extends to "any person," alleging discrimination based on "any provision,'" and thus is not limited to qualified individuals with a disability. Thus, to determine what remedies are available to a non-disabled plaintiff suing under § 12112(d), the court must look to the remedies provisions of Title VII, 42 U.S.C. § 2000e-5.

Title VII allows a private suit by a plaintiff "aggrieved by the alleged unlawful employment practice." 2 U.S.C. § 2000e-5(f). Title VII further provides, in relevant part, that "No order of the court shall require . . . the payment . . . of any back pay, if such individual was . . . suspended or discharged for any reason other than discrimination." 42 U.S.C. § 2000e-5(g)(2)(A). This statutory language suggests that a non-disabled plaintiff pursuing a claim under § 12112(d) must establish that the unlawful medical examination proximately caused her damages. To find otherwise would place a lower burden on a non-disabled plaintiff before she may recover damages than that placed on a disabled plaintiff.

Moreover, the circuit courts that have addressed the issue have found that a non-disabled plaintiff must establish proximate cause before she may recover damages for a § 12112(d) violation. *See, e.g., Cossette*, 188 F.3d at 971 (remanding for a determination as to whether the defendant's unlawful disclosure of the plaintiff's medical information to a prospective employer caused her injury because it was unclear whether plaintiff was physically able to perform the job); *Griffin*, 160 F.3d at 595, n.5 (summary judgment inappropriate where plaintiff presented

evidence that his responses to unlawful medical inquiries caused the defendant to refuse to hire him); *Armstrong*, 141 F.3d at 562 ("[T]here must be some cognizeable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation."); *Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir. 1996) ("[C]ompensatory damages, like other damages, are not recoverable under Title VII (and derivatively under the ADA) unless the prohibited employment practice was the cause of the applicant's rejection."). I therefore conclude that a non-disabled plaintiff must establish that a § 12112(d) violation proximately caused her damages before she may recover for those damages.

## III. Whether Indergard Has Presented Sufficient Evidence That the Medical Exam Proximately Caused Her Damages

My conclusion that a non-disabled plaintiff pursuing a § 12112(d) claim must establish that a violation proximately caused her damages does not resolve the issue that Ninth Circuit left undecided here. That is, the Ninth Circuit discussed, but did not directly address, whether a court may properly conclude that a medical exam did not proximately cause a plaintiff's damages when the evidence shows that the defendant terminated the plaintiff based solely on the plaintiff's failure to pass a non-medical portion of the exam. It appears that no other court has squarely addressed the issue, either because the § 12112(d) subsection did not apply, or because the plaintiff singled out specific questions or inquiries as unlawful. *O'Neal*, 293 F.3d at 1010 (holding that plaintiff could not recover under § 12112(d)(3) because he was not disabled, or perceived as disabled); *Griffin*, 160 F.3d at 592 (plaintiff's claim based on only two questions on an employment questionnaire); *Armstrong*, 141 F.3d at 557, 560 n.16 (plaintiff's claim based on background check into worker's compensation history); *see also Tice*, 247 F.3d at 519-520 (plantiff's claim based on defendant's disclosure of specific medical information); *Cossette*, 188

F.3d at 970 (same).

Here, Georgia-Pacific contends that the PCE did not proximately cause Indergard's injury because the evidence shows that Georgia-Pacific refused to reinstate her solely because she failed lift tests "that were not themselves a medical examination or inquiry." Its argument thus necessarily assumes that the lift tests were not part of the medical exam because they measured only Indergard's physical ability to perform job tasks. That assumption is unsupportable.

The Ninth Circuit's holding that the PCE constituted a medical examination recognized that "portions of Indergard's PCE went beyond simply measuring her physical ability to perform job tasks" but did not identify any particular test that measured only her physical ability. *See Indergard*, 582 F.3d at 1056. In addition, the Ninth Circuit's holding that the PCE constituted a medical exam partially relied on factors that apply to the entire exam. For example, the Ninth Circuit relied on the fact that a healthcare professional conducted the PCE, interpreted Indergard's performance and shared the results with Indergard's treating physician. *Id.* at 1055. The lift tests did not merely observe whether Indergard could perform certain lifts, but rather involved a healthcare professional's assessment of Indergard's body mechanics during the lifts and subsequent recommendation regarding the type and frequency of lifts that Indergard could perform. The Ninth Circuit also noted that "the offices of a licensed occupational therapist are more like a medical setting than, for example, an employee's work place." *Id* As a result, I am reluctant to conclude that the lift tests were non-medical.

While I recognize that employers need a means to ensure that employees may safely return to work following an injury, they may not do so by forcing employees to engage in a barrage of tests that reveal information about the employee's physical impairments unrelated to any business necessity. *Id.*; *see also Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287

F.3d 955, 960 (10th Cir. Okla. 2002) ("The results of a medical inquiry or examination may not be used to disqualify persons who are currently able to perform the essential functions of a job . . . because of fear or speculation that a disability may indicate a greater risk of future injury.") (citing Equal Employment Opportunity Commission, Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act § 6.4 (1992)). Here, although I find this a close question, I conclude that, because the lift-tests were more than a mere physical exam, and the evidence that shows Georgia-Pacific relied on the lift tests when it refused to reinstate Indegard, she has presented sufficient evidence that the PCE proximately caused her damages. As a result, I recommend that the court deny Georgia-Pacific's partial motion for summary judgment.

**CONCLUSION**

Georgia-Pacific's Motion for Partial Summary Judgment (#88) should be denied.

///

///

///

///

///

///

///

///

///

///

///

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 14th day of June 2010.

Honorable Paul Papak
United States Magistrate Judge